# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ LOAIZA ARIAS,<br><br>      Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden, Otay Mesa Detention Center, JOSEPH FREDEN, Director, San Diego Field Office of Detention and Removal, United States Immigration and Customs Enforcement, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, KRISTI NOEM, Secretary, United States Department of Homeland Security, and PAM BONDI, Attorney General, United States Department of Justice,<br><br>      Respondents. | Case No.: 3:25-cv-02595-BTM-MMP<br><br>**ORDER GRANTING PETITION FOR THE WRIT OF HABEAS CORPUS**<br><br>[ECF NO. 1] |

  Pending before the Court is Luz Loaiza Arias's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated below, the Court GRANTS the petition and orders Arias's immediate release from custody.

## I. BACKGROUND

Arias arrived in the United States on October 19, 2023, to seek asylum. (ECF No. 1 ("Pet."), 7.) She had fled from Columbia after receiving death threats from the criminal organization Autodefensas Gaitanistas. (*Id.*) Once Arias arrived at the San Ysidro Port of Entry, she applied for admission into the United States. (ECF No. 5 ("Return"), 1.) Because she lacked valid entry documents, she was "inadmissible" under 8 U.S.C. § 1182(a)(7)(i). (ECF No. 5.1 ("Decl."), 2.) She was given written notice to appear for a Section 1229a removal proceeding. (ECF No. 5.2, Ex. 1.) But that same day, she was provided "humanitarian parole" into the country under 8 U.S.C. § 1182(d)(5)(A). (Decl., 2.) Arias was issued a Form I-94, an electronic record of her arrival to the United States that listed a departure date two years from then. (Pet., 8.) *See* U.S. Customs & Border Prot., CBP No. 1496-0721, *I-94 Automation Fact Sheet* (2021) [hereinafter *I-94 Automation Fact Sheet*].

In April 2025, the Department of Homeland Security sent a "mass form email" to Arias and other noncitizen[1] parolees, stating that their parole would be terminated within seven days. (Pet., 8.) The immigration court began removal hearings the following month. (*See* ECF No. 5.2, Ex. 2; Pet., 8.) On July 28, 2025, the Respondents moved to dismiss Arias's removal proceedings. (Return, 1.) After the court granted the motion, the Respondents issued a warrant and arrested Arias. (*Id.* at 1–2.)

Arias remains in custody at the Otay Mesa Detention Center. (Return, 2.) On October 1, 2025, Arias petitioned the Court for the writ of habeas corpus.

## II. DISCUSSION

Arias seeks relief on two grounds. First, she argues that the Respondents violated her Due Process rights by not giving her notice and an opportunity to be heard before they detained her. (*See* Pet., 15.) Second, she argues that the Respondents violated the Administrative Procedure Act ("APA") by revoking her parole and detaining her without

---

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien." 8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

providing a proper explanation for their decision. (*See* Pet., 16–17.) The Respondents contest the Court's jurisdiction to review the petition. (Return, 2.) On the merits, the Respondents argue that Arias is lawfully subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Return, 5.)

The Court finds that it has jurisdiction over the petition. The Court also finds that relief is warranted on the second claim because the Respondents improperly revoked Arias's parole. The Court declines to reach the first claim.

### A.     Jurisdiction

The Court has long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3); *see* Judiciary Act of 1789, ch. 20, 1 Stat. 73, 81–82. Yet the Respondents argue that the Court lacks jurisdiction over this petition under 8 U.S.C. § 1252(b)(9) and § 1252(g). (Return, 2–3.)

These are the same jurisdictional arguments that other decisions in this district have soundly rejected. *See, e.g.*, *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *3 (S.D. Cal. Sept. 3, 2025); *Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). Arias does not ask the Court to review her removal proceedings. (ECF No. 7, 2.) She also "does not solely challenge [her] conditions of confinement." (*Id.* at 1 n.1.) Rather, she challenges the legality of her detention. The Court therefore adopts the reasoning of the other decisions in this district, rejects the Respondents' arguments, and finds that it has jurisdiction to review the petition.[2]

---

[2] Arias claims that she need not exhaust her administrative remedies because exhaustion "would be entirely futile." (ECF No. 1, at 10.) The Respondents reply in a footnote, asking the Court to dismiss Arias's petition because she did not first seek a bond hearing or appeal the "hypothetical" bond denial to the Board of Immigration Appeal. (ECF No. 5, at 5 n.3.) But "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived." *Est. of Saunders v. Comm'r of Internal Revenue*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). Thus, the Court declines to reach the exhaustion issue. In any event, the Board of Immigration Appeal recently held that immigration judges lack the authority to hear bond requests from any noncitizen not "lawfully inspected and admitted by an immigration officer." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 228 (B.I.A. 2025). Because Arias was not admitted but paroled into the United States, there may be no administrative remedies for her to exhaust.

**B.     Administrative Procedure Act**

The APA requires a reviewing court to set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a).  The "touchstone of 'arbitrary and capricious' review" is "reasoned decisionmaking." *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983)).  An agency's action may survive review only if the agency sufficiently explains the action, which includes demonstrating a "rational connection between the facts found and the choice made." *Id.*  A reviewing court may not "infer an agency's reasoning from mere silence." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008).

    **i.     Section 1182(d)(5)(A)**

Arias argues that the Respondents violated the APA by "categorically" revoking her parole "without any description of the reasons . . . and detaining the Petitioner without consideration of her individualized facts and circumstances." (Pet., 17.)

Arias received parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which provides:

> The Attorney General may, except as provided in subparagraph (B)[3] . . . , in his discretion parole into the United States temporarily . . . for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

---

[3] Under subsection 1182(d)(5)(B), an "alien who is a refugee" must be admitted as a refugee under Section 1157 rather than be paroled into the country. The exception is if the Attorney General finds "compelling reasons in the public interest," particular to the noncitizen, that require parole. 8 U.S.C. § 1182(d)(5)(B). Although this refugee clause may apply to Arias, neither party has raised the issue. (Pet., 7 ("Arias . . . fled Colombia to seek asylum in the U.S.")) *See Who Is an 'Asylum-Seeker'?*, United Nations High Comm'r for Refugees, https://www.unhcr.org/us/about-unhcr/who-we-protect/asylum-seekers [https://perma.cc/SQQ3-L6NU] (last visited Nov. 22, 2025) ("An asylum-seeker is someone who has or intends to apply to be recognized as a refugee, but their application has yet to be processed.").

Under the governing regulation, humanitarian parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole. 8 C.F.R. § 212.5(e). Furthermore, the noncitizen must receive written notice of the parole's termination. *Id.*

Several courts have reviewed the revocation of humanitarian parole for petitioners similar to Arias. *See, e.g.*, *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025). The Court follows other decisions in this district and incorporates their reasoning to find that the Respondents failed to follow the statutory and regulatory provisions in three respects. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149 (S.D. Cal. Oct. 1, 2025); *Salazar v. Casey*, No. 25-cv-2784 JLS-VET, 2025 WL 3063629 (S.D. Cal. Nov. 3, 2025); *Perez v. LaRose*, No. 25-cv-02620-RBM-JLB, 2025 WL 3171742 (S.D. Cal. Nov. 13, 2025).

First, the purpose of Arias's parole has not been served. Arias fled from Columbia to the United States to seek asylum. When she was arrested and detained, she was still seeking asylum. (ECF No. 5.2, Ex. 2, 2.) Second, humanitarian reasons still justify Arias's parole instead of detention and removal. Autodefensas Gaitanistas, the organization that threatened Arias's life, continues to "engage[] in drug trafficking, migrant smuggling, and extortion and is considered a[] [foreign terrorist organization] by the U.S. government." Clare Ribando Seelke, Cong. Rsch. Serv., R48287, *Colombia: Background and U.S. Relations* 8 n.40 (2025). Third, courts have found that revocation of parole requires an individualized determination. *See Bostock*, 792 F. Supp. 3d at 1138; *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). *But see Doe v. Noem*, 152 F.4th 272, 286 (1st Cir. 2025) (finding an individualized termination of parole is not required). Although Arias received written notice that her parole was revoked, Respondents provided no reasoning that was particular to Arias. No evidence suggests that the Respondents explained their reasons for revocation to Arias aside from the mass form email they sent to parolees.

The Respondents also argue that Arias's parole "was terminated and, in any event, has expired." (Return, 5.) After arresting Arias, they provided her with a notice of expedited removal under 8 U.S.C. § 1225(b)(1). This notice, they claim, "constitute[s] written notice of termination of parole." 8 C.F.R. § 212.5(e)(2)(i). Alternatively, they argue that Arias's "grant of parole was valid for only two years and that period has now expired." (Return, 5.)

The Respondents misinterpret the requirements of the parole framework. Assuming that the notice of expedited removal was written notice, the Respondents still failed to demonstrate that the purpose of Arias's parole was served or that humanitarian reasons and public benefit do not warrant parole. 8 C.F.R. § 212.5(e); *see* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled . . . .").

Their alternative argument also fails. The Form I-94 given to Arias listed the departure date by which she "must exit the U.S." *I-94 Automation Fact Sheet*. But that form is issued to "travelers who are admitted to the U.S., who are adjusting status while in the U.S., or extending their status, among other uses." *Id.* The I-94 is not specific to noncitizens paroled under Section 1182. The listed departure date is unlikely to bind humanitarian paroles who are governed under the parole framework discussed earlier. Moreover, the departure date is recorded at the time the form is issued. An *ex ante* record cannot constitute the real-time "opinion of the Attorney General" that the purpose of parole has been served and the noncitizen must be detained or removed. 8 U.S.C. § 1182(d)(5)(A). In other words, Arias's parole remains active despite the expiration of her I-94.

The Respondents failed to demonstrate that their revocation of Arias's parole was the product of reasoning decisionmaking. By denying Arias "the required procedure before purporting to terminate [her] parole, Respondents acted arbitrarily and capriciously and violated the APA." *Bostock*, 792 F. Supp. 3d at 1146. That revocation action caused Arias to be improperly detained. The writ must issue to release her from custody.

####        ii.    Sections 1225 and 1226

Arias's parole was improperly revoked, making her ineligible for detention under either Section 1225 or Section 1226. Thus, the issue of which statute applies to Arias is no longer in front of the Court.

The Court notes, however, that "numerous courts across the nation have considered" the applicability of these statutes to noncitizens that have remained in the United States longer than two years. *Martinez Lopez v. LaRose*, 25-cv-2717-JES-AHG, 2025 WL 3030457, at *4–5 (S.D. Cal. Oct. 30, 2025) (collecting cases). Subsection 1225(b)(1) encompasses noncitizens "arriving in the United States" and others who, among other requirements, "have not been admitted or paroled." Arias has been in the United States for more than two years on humanitarian parole. Because subsection 1225(b)(1) facially cannot apply to Arias, she cannot be subjected to expedited removal "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i).

Additionally, subsection 1225(b)(2) subjects an applicant for admission who is "seeking admission"—according to the "examining immigration officer"—to Section 1229a removal proceedings. The active construction of "seeking admission," applied to a noncitizen examined by a present immigration officer, suggests that this subsection also applies to noncitizens arriving in the United States instead of those already present. *Cf. Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("As noted, § 1226 applies to aliens already present in the United States.").

### C.   Due Process

Because the Court grants the petition on other grounds, the Court declines to reach the merits of Arias's Due Process claim. Count One of the petition is dismissed without prejudice as moot.

### III.   CONCLUSION

The petition for a writ of habeas corpus is **GRANTED** on the second claim and the writ is **ISSUED**. The Respondents shall immediately release Arias from custody on her preexisting conditions. The first claim is dismissed without prejudice as **MOOT**. The

1  parties shall file a statement as to the satisfaction of the writ by November 26, 2025, at 5
2  p.m.  The Court retains jurisdiction to enforce the writ.
3      **IT IS SO ORDERED.**
4  Dated:  November 25, 2025

_____
Honorable Barry Ted Moskowitz
United States District Judge